IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KACEY B. ROUSEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   No. 05-4174-JPG |
| | ) |
| THE CITY OF JOHNSTON CITY, TONY | ) |
| L. KENDRICK, Johnston City Police Officer, | ) |
| in his individual and official capacity, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

THIS MATTER comes before the court on defendant, Tony L. Kendrick's ("Kendrick") motion to dismiss claims and strike prayers for damages from plaintiff's complaint (Doc. 4). Kendrick asks the Court (1) to dismiss the claim in Count I, a claim under 42 U.S.C. § 1983, against him in his official capacity on the grounds that that claim is duplicative of the claim against the City of Johnston City and (2) to strike the prayer against him for punitive damages in Count II, a state law battery claim, on the grounds that such relief is barred by § 2-102 of the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101 *et seq*. Plaintiff Kacey B. Rousey has not responded to the motion.[1]

**I.    Background**

The complaint in this case alleges that on September 4, 2004, Kendrick, acting as a police officer of the City of Johnston City, arrested plaintiff Kacey B. Rousey ("Rousey"). Rousey alleges that Kendrick unreasonably searched and seized him and used excessive physical force

---

[1]The Court notes that the issues, attorneys and defendants involved in the pending motion were also involved in a motion to dismiss this Court decided in *Campbell v. Kendrick*, No. 05-cv-4072-JPG. Therefore, in this order, the Court quotes extensively from the order issued in *Campbell*, which Kendrick attaches to his motion to dismiss.

during his arrest and confinement. Rousey is suing Kendrick in his individual and official capacities and the City of Johnston City under 42 U.S.C. § 1983 for violation of the Fourth Amendment's prohibition on unreasonable search and seizure (Count I) and for battery under Illinois state law (Count II).[2] Rousey seeks punitive damages for each count.

## II.   § 1983 Official Capacity Claim – Count I

Pursuant to Local Rule 7.1(c), the Court construes Rousey's failure to respond to Kendrick's motion as an admission that his § 1983 claim against Kendrick in his official capacity is duplicative of his § 1983 claim against the City of Johnston City and should be dismissed without prejudice. The Court finds, however, that striking pursuant to Federal Rule of Civil Procedure 12(f), not dismissal, is the appropriate manner of disposing of the claim. Under Rule 12(f), upon a motion or upon its own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The

§ 1983 claim against Kendrick in his official capacity is redundant and will therefore be stricken.

## III.   Prayer for Punitive Damages – Count II

Kendrick's second request cannot be resolved so quickly. Kendrick asks that the Court strike the prayer against him for punitive damages in Count II on the grounds that § 2-102 of the Tort Immunity Act bars such relief. The Court examined this issue in *Campbell v. Kendrick*, No. 05-cv-4072-JPG when it granted Kendrick's motion to strike plaintiff Mark S. Campbell's ("Campbell") prayer for punitive damages:

---

[2]Count III is not relevant to this motion.

2

Again, this request falls under Rule 12(f).[3] The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028 (N.D. Ill. 1998).[4]

Section 2-102 of the Tort Immunity Act provides, in pertinent part:

> [N]o public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

Kendrick argues that he is a "public official" and that this provision applies because he was acting in an official executive capacity in his contact with Campbell. In support of this argument, Kendrick cites *Reese v. May*, 955 F. Supp. 869 (N.D. Ill. 1996), a case in which an arrestee sought punitive damages for the actions of a police officer during his investigation and prosecution. The court ultimately concluded that § 2-102 barred such claims.

Campbell, on the other hand, argues that *Reese* is distinguishable from the case at bar and, in any case, that the holding in *Reese* is too broad. He further argues that the phrase "public official" is not synonymous with the phrase "public employee" and does not include run-of-the-mill police officers like Kendrick, an argument not discussed in *Reese*. Campbell believes that as a consequence § 2-102 has no effect on the claims in Count II against Kendrick.

The Court notes that Illinois courts and higher federal courts have been silent on the scope of § 2-102 in this type of situation, forcing this Court to turn to other district courts' decisions for guidance. Thus, the Court first examines *Reese*, the sole case upon which Kendrick relies to support this part of his motion. In that case, a municipal police officer examined Reese's driver's license in connection with a traffic stop. *Reese*, 955 F. Supp. at 871. The officer suspected that the license was altered, so he seized it. *Id.* Upon further investigation, however, the officer learned that the license did not contain any false information.

---

[3]Campbell has not argued that Kendrick has waived the argument by failing to raise it within the time limits set forth in Rule 12(f). He has therefore waived his waiver argument.

[4]The Court views this portion of the motion as a motion to strike under Rule 12(f) and not as a motion to dismiss under Rule 12(b) or a motion for judgment on the pleadings under Rule 12(c). This is because this part of the motion does not seek to dispose of an entire claim, as a Rule 12(b) motion does for failure to state a claim and as a Rule 12(c) motion does where judgment is proper. Kendrick's motion seeks not to resolve an entire claim but only to eliminate one phrase in the prayer for relief. A Rule 12(f) motion to strike is the appropriate vehicle to make such a request. *See, e.g., Allison v. Dugan*, 737 F. Supp. 1043, 1049-50 (N.D. Ind. 1990), *aff'd in part, rev'd in part on other grounds*, 951 F.2d 828 (7th Cir. 1992).

*Id.* Nevertheless, a second officer was assigned to investigate the possible license alteration, and that officer swore in a criminal complaint that Reese had altered his license. *Id.* A warrant was issued, and Reese was arrested, but the criminal charges were ultimately dismissed. *Id.* at 872. Reese then sued the two officers for false arrest, false imprisonment and malicious prosecution under Illinois state law, among other things, and sought compensatory and punitive damages. *Id.* at 871. The officers sought refuge from the punitive damages claim in § 2-102 of the Tort Immunity Act . *Id.* at 873.

The *Reese* court determined that § 2-102 conferred immunity from punitive damages when two criteria are met:

> (1) the defendants must be "public officials" within the meaning of the statute, and (2) they must have been serving in an "official executive, legislative, quasi-legislative or quasi-judicial capacity" when they engaged in the actions that allegedly resulted in the plaintiff's injury.

*Id.* In light of the evolution and legislative history of § 2-102 and the Tort Immunity Act as a whole, the court interpreted the phrase "public official" to mean "a public employee who exercises discretion in the performance of uniquely governmental functions." *Id.* at 875. The court found that the two police officers were "public officials" because their acts in investigating and prosecuting Reese were discretionary and were uniquely related to their particular governmental offices as police officers. *Id.* The court also held that the officers were functioning in an executive capacity, that is, they were acting to effectuate and enforce the law, when they investigated and assisted in Reese's prosecution. *Id.* at 877. Accordingly, the Court held that § 2-102 immunized the officers from punitive damages. *Id.* Other district courts have reached similar conclusions. *See, e.g., Union Pacific R.R, Co. v. Village of S. Barrington*, No. 96 C 1698, 1998 WL 102517 (N.D. Ill. 1998); *Holmes v. Village of Hazel Crest*, No. 92-C-5979, 1993 WL 155500 (N.D. Ill. 1993).

Other cases have taken a different view of § 2-102, holding that it does not shield police officers from punitive damages when they are sued in their individual capacities. *See, e.g., Bedenfield v. Schultz*, No. 01 C 7013, 2002 WL 1827631 at *10 (N.D. Ill. Aug. 7, 2002); *McCray v. Hermen*, No. 99 C 1495, 2000 WL 684197 (N.D. Ill. May 23, 2000); *McNamara v. Foley*, No. 97 C 4944, 1998 WL 409412 (N.D. Ill. July 15, 1998). Like the case at bar, *McNamara* involved assault and battery claims against a police officer. *Id.* at *1. In that case, the court adopted the two-pronged immunity test set forth in *Reese* as well as *Reese*'s definition of "public official." *Id.* at *8-*9. It then held that the police officer was a "public official" because he exercised discretion in performing his unique police duties and was performing an executive function because he was enforcing the law at the time of his acts. *Id.* at *9. However, *McNamara* concluded that, although § 2-102 applied, it was not broad enough to immunize

4

the police officer in both his official and individual capacities where his acts "cross the line dividing discretionary law enforcement functions tailored to address the exigencies of a particular situation and actions taken outside the scope of employment." *Id.* at *10.  The *McNamara* court held that the complaint in that case adequately alleged that that line had been crossed when the police officer assaulted the plaintiff for no reason, that is, where his acts were not discretionary acts within the context of law enforcement but the acts of a renegade police officer acting outside the scope of his employment and any executive function. *Id.*

In addition to arguing that *McNamara* provides the appropriate rule of law as to the breadth of § 2-102, Campbell argues that Kendrick does not fall into the category of "police official."  He notes that another provision of the Tort Immunity Act applies to "public employees," a phrase defined by the statute and clearly includes police officers, and that the Illinois legislature's use in § 2-102 of different language – "public official" – indicates that it did not intend the two phrases to be synonymous.  Campbell points to Illinois courts' distinctions between employees and officials in other contexts.  *See, e.g., Daniels v. City of Venice*, 516 N.E.2d 701, 703 (Ill. App. Ct. 1987) (holding that the category of "officers" does not include "mere city employees" and is instead made up of appointees for specified terms who take oaths of office and have supervisory and discretionary authority); *People v. Capuzi*, 170 N.E.2d 625, 630 (Ill. 1960) (stating that "all civil service employees are not officers.").

The Court finds that Kendrick is entitled under § 2-102 to immunity from punitive damages on Campbell's state law battery claim.  Although the Illinois legislature used the phrase "public official" as opposed to the phrase "public employee," the Court does not find this difference dispositive of the pending motion to strike.  A "public employee" is defined by the Tort Immunity Act to include "a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee" of a local public entity.  745 ILCS 10/1-202 & -207.  A "public official" is considered to be the subset of public employees that exercises discretion or makes policy.  *See Reese*, 995 F. Supp. at 875.  Indeed, § 2-201 of the Tort Immunity Act[5], which codified the common law doctrine of *public official* immunity, *see id.* at 869; *Horton v. City of Ottawa*, 352 N.E.2d 23, 24 (1976), applies by its terms to *"public employees" who have discretion or make policy.*  Thus, Campbell is correct to note that § 2-102's use of the phrase "public official" is significant in that it does not include

---

[5]Section 2-201 of the Tort Immunity Act states:

Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

> all public employees, but he fails to recognize that it does include all public employees that use discretion or make policy. This is not inconsistent with the cases Campbell cites to distinguish "public officials" from "public employees." Accordingly, the Court finds that because Kendrick exercised discretion in exercising his executive functions of arresting and holding Campbell, he is a public official to which § 2-102 applies in the context of Campbell's state law battery claim.
>
> The Court further finds that the breadth given § 2-102 in *Reese* is appropriate. First, there is nothing in the text of the statute that suggests it is limited to official capacity suits. It provides immunity from punitive damages "*in any action* arising out of an act or omission made by the public official while serving in an official executive . . . capacity, brought *directly or indirectly* against him. . . ." § 2-102 (emphasis added). The use of the italicized phrases indicate an intention to convey the immunity broadly. Furthermore, this Court disagrees with *McNamara* that officer's egregious acts during their employment can fall outside the scope of their employment, and thus outside of the protection of § 2-102. The Illinois Supreme Court has held that official acts include unlawful ones under color of law: "Official acts in the performance of the duties of an office do not mean simply the lawful acts of the officer holding that office, but include all acts done in his official capacity, under color and by virtue of that office." *People ex rel. Woll v. Graber*, 68 N.E.2d 750, 756 (Ill. 1946), *cited in People v. Lanigan*, 818 N.E.2d 829, 836 (Ill. App. Ct. 2004), *app. denied*, 829 N.E.2d 791 (Ill. 2005). To the extent that this might yield an unacceptable result in Campbell's eyes, a remedy lies with the legislature, not with a court.
>
> For these reasons, the Court finds that Kendrick was a "public official" exercising discretion, albeit poorly under the facts alleged in the complaint, in the performance of his unique police functions and that he was serving in an official executive capacity while engaging in those acts. Therefore, he is entitled under § 2-102 to immunity from punitive damages on Count II, Campbell's state law battery claim, and the prayer for such punitive damages is immaterial. Accordingly, the Court will grant the motion to strike the prayer for punitive damages in Count II against Kendrick. Campbell may still seek punitive damages against Kendrick in his individual capacity in Count I, the § 1983 claim. *See Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998).

*Campbell v. Kendrick*, 2005 WL 3440726, at *1-4 (S.D. Ill. Dec. 14, 2005).

The Court notes that the order containing this analysis was incorporated into Kendrick's motion in this case and construes Rousey's failure to respond to the pending motion as an admission that the Court's analysis in *Campbell* was correct. Therefore, for the same reasons set forth in the above language from *Campbell*, the Court will grant Kendrick's motion to strike

Rousey's prayer for punitive damages in Count II against Kendrick in this case.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** the motion to dismiss and strike (Doc. 4), **STRIKES** Count I against Kendrick in his official capacity and **STRIKES** the prayer for punitive damages in Count II against Kendrick.  The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**Entered this 9th day of February, 2006.**

                                        s/ J. Phil Gilbert
                                        **JUDGE**